UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SCOTT MIRMINA<br>      Plaintiff<br><br>V.<br><br>GENPACT, LLC<br>      Defendant | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:   APRIL 19, 2016 |

# COMPLAINT

## INTRODUCTION

1. This is an action to redress age, race and gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as Amended, 42 U.S.C. § 2000e (a)(1), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 through 29 U.S.C. § 634, and the Connecticut Fair Employment Practices Act ("CFEPA"), Connecticut General Statutes § 46a-60(a)(1) *et seq.*

## JURISDICTION

2. Jurisdiction is based on the existence of a federal question pursuant to 28 U.S.C. § 1332.  Supplemental jurisdiction over Plaintiff's state law claims is based on 28 U.S.C. § 1364.  Plaintiff filed his claims with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and the Equal Employment Opportunity Commission ("EEOC") on or about August 19, 2015.  Plaintiff received a release of jurisdiction from the EEOC on March 4, 2016 and the CHRO on March 3, 2016.

**PARTIES**

3. Plaintiff, Scott Mirmina, is an individual who resides at 257 Route 80, Apartment 4C, Killingworth, CT 06419. Plaintiff is a Caucasian male 51 years of age.

4. The Defendant, Genpact, LLC, is a Delaware Corporation with its principal place of business located in 42 Old Ridgebury Road, Danbury, Connecticut. The Defendant is involved in outsourcing / management business.

**FACTS**

5. Plaintiff began working for the Defendant in March of 2011 on a contract basis. The primary duty of his position was to recruit staff to fill roles for clients in the US Analytics part of the Defendant's business, in addition to assisting the executive recruitment team on an ad-hoc basis.

6. In or around May 1, 2012, based upon positive feedback from peers and management, the Defendant hired the Plaintiff in a full-time permanent position with the title of Recruitment Manager. Plaintiff's work duties remained the same.

7. Plaintiff received a bonus for business years 2012 and 2013 along with salary increases each year. He also received accolades for his work.

8. In or around December of 2013, Sarika Saxena ("Saxena") was hired by Respondent.

9. Saxena was given the lead role in the recruitment effort for the US Analytics positions. Sarika is Asian Indian and much younger than Plaintiff.

10. A large percent of the Defendant's employees are Asian Indian.

11. In March of 2014 Plaintiff received a positive evaluation with a bonus from his then manager, Jorge Colon (Senior Manager of HR).

12. In or around July of 2014, Mr. Colon advised Plaintiff that he would not be doing his mid-year evaluation as Ms. Saxena had assumed the role of his direct supervisor. Although Ms. Saxena had assumed the leadership role for the US Analytic part of the business, Plaintiff had not been informed formally that Ms. Saxena was his direct supervisor and he reported to her. At that point, Ms. Saxena had not informed Plaintiff of this or made any other effort to indicate that he was a part of her team.

13. Plaintiff then attempted to reach out to Ms. Saxena in order to establish a working relationship with her. She rejected his efforts to do so. She did not treat him as if he were someone she considered to be part of her team. She largely ignored Plaintiff.

14. In the next few months, Plaintiff began to experience outright hostile behavior from Ms. Saxena. She continued to treat him as if he were not a part of her team. She also made inappropriate comments to him during their phone calls when others were on the call. She initially dismissed his efforts to participate in meetings or phone calls. This ultimately escalated to inappropriate and demeaning comments directed to Plaintiff designed to discredit and humiliate him.

15. This became even more obvious after she hired Sulekha Banerjee and Angana Kanbid as her reports to also function as recruiters for the US Analytics part of the business. Both employees are Asian Indian and much younger than the Plaintiff. Plaintiff noted that Ms. Saxena did not speak to them or treat them in the demeaning manner that she treated him.

16. As of September of 2014, Plaintiff had attempted many times to have a one on one meeting with Ms. Saxena, as is customary in a supervisor / subordinate role. She made excuses not to do so.

17. In late October early November of 2014, on a team conference call with the other direct reports, Ms. Saxena stated twice "It seems some people are leaving early and not working full days." After the second time, Plaintiff began to question whether she directed this statement to him. She had no basis to make such a statement. It was unsettling for her to make such an outrageous accusation in a group setting. At this time, Plaintiff worked from his home office.

18. On November 14, 2014, Ms. Saxena sent an email to the Plaintiff and Sulekha Banerjee stating "Guys, we are all expected to work till 5.00 EST. If we need to do any personal stuff in between then please let me know in advance. I have been noticing that some of us only work half day on Friday…regularly".

19. On November 17, 2014, Plaintiff learned from Jorge Colon that Ms. Saxena was advising those in management that Plaintiff worked only 15 hours a week and that she could never get in touch with him. These were false statements designed to impugn Plaintiff's reputation and character.

20. On November 18, 2014, Plaintiff spoke with Greg Meyers regarding Ms. Saxena's disparaging and false comments about his work hours and the disparate treatment to which he was being subjected. At Mr. Meyer's direction, on November 20, 2014, he, Ms. Saxena and Plaintiff met to review her false accusations and behavior. During the meeting she falsely stated that she had called him the prior Friday at 2:00 p.m., that she could not reach him and that he was not responsive. Plaintiff's phone records showed that she had actually called him at 4:00 p.m. and that he had responded to her via text after the call within a few minutes. Ms. Saxena had been caught in a lie.

21. Mr. Meyers had another appointment so the meeting ended without any resolution. Ms. Saxena never addressed in any meaningful manner her false accusations and disparaging comments directed to the Plaintiff, and the disparate treatment directed to him. It was agreed that she would send out a memorandum summarizing the meeting, which she never did.  In the following weeks/months, Plaintiff continued to express concerns to Mr. Meyers regarding Sarika's hostile behavior toward him.

22. Plaintiff had also begun to make inquiries with HR regarding the complaint process.

23. Unbeknownst to the Plaintiff at or around this time, Ms. Saxena had begun preparing a Performance Improvement Plan ("PIP") for him. She had not had any regular 1 on 1's with him or made any effort to get to know him, avoided 1 on 1 contact with him, and did not provide year-end feedback for the 2014 work year. Despite his limited interactions with her and any warning, she had decided that a PIP was in order.

24. On or about January 15, 2015, in the presence of Rashi Jain, another recruitment contractor with whom Plaintiff worked, Sulekha Banerjee and Preeti Patniak, senior human resources manager, Sarika referred to a deadline coming up which was for noon on a Friday. She looked at Plaintiff and stated "Oh that works out well for you, Scott. You only work until noon on Fridays anyway."

25. On or about January 30, 2015, Ms. Saxena made yet another false statement in an email, disparaging Plaintiff's work, copying Greg Meyers.

26. The hostility from Ms. Saxena continued. In or around late March 2015, she admonished the Plaintiff for not being on a call for a team meeting even though she knew he was on a business call he could not cut short. She also falsely accused Plaintiff of not participating on another team meeting call when he had done so.

27. On or about March 11, 2015, Ms. Saxena issued to Plaintiff the PIP. This is the first official year-end feedback he received from Sarika. This was supposedly based on his performance for 2014 and 2015. She claimed he had failed to meet clearly defined metrics which had never been communicated to him. They had never had a single one on one meeting where they had discussed his work or his 2014 performance, despite him completing his required year-end self-assessment for 2014 within the company HR system I-Perform by the required due date of 12/31. Up to this point, she had largely ignored him and his attempts to review him work with her. It became clear that she was setting him up to fail and sought to rid him from his employment.

28. At this time, Ms. Saxena told Plaintiff that Jorge Colon had input into his final evaluation for 2014. Plaintiff later learned that this was also a false statement. Mr. Colon was not consulted in connection with his final 2014 evaluation or the PIP. She fabricated his involvement in order to justify a subpar evaluation she could not support.

29. At this time, Plaintiff's discussions with HR regarding Ms. Saxena's hostility and disparate treatment had been initiated. Plaintiff had submitted to HR a detailed memorandum outlining some of Sarika's hostile behavior toward me on March 11, 2015. The hostile conduct continued.

30. On or about March 19, 2015, Jorge Colon told Plaintiff that Ms. Saxena stated to him that Plaintiff said "disgusting" things about her, something Plaintiff had never done. Again, Ms. Saxena attempted to portray Plaintiff in a negative light in order to discredit him and support her obvious plan to rid him from his employment. This statement was made during the PIP period when Ms. Saxena is supposed to be "objectively" evaluating Plaintiff's performance.

31. On March 31, 2015 Plaintiff again reported to HR his concerns regarding the hostile conduct toward him. He reviewed the false and defamatory statements she had made about him as well as the difference in treatment of the other younger and Asian Indians who reported to her.

32. Despite the corroboration of Sarika's conduct, HR representative, Sarah Carpenter reported to Plaintiff on April 2, 2015 (less than 48 hours after Plaintiff reiterating his concerns over Ms. Saxena's behavior towards him) that there was no evidence of any discrimination or disparate treatment and that the PIP would stand. Ms. Carpenter attempted to mischaracterize his concerns in the process of delivering the results of the "investigation." She basically ignored the evidence showing Sarika's hostility toward Plaintiff, and, in particular, her false and disparaging statements regarding Plaintiff's work hours, and stated that the investigation was "closed."

33. On April 22, 2015, Plaintiff wrote to Genine Mikucki, a higher level HR representative regarding his concerns. He expressed his concerns regarding discrimination based on age, gender and race. He reviewed the false and defamatory statements that Ms. Saxena had made about him and her rush to issue a PIP without any feedback or discussion.

34. Ms. Mikucki responded on April 27, 2015 via email refusing to comment on the false and defamatory statements that Ms. Saxena had made about Plaintiff and the other ways that she had been hostile toward Plaintiff, and instead stating in a conclusory fashion that there was "no evidence" of discrimination. Ms. Mikucki also stated that if he had any proof of misconduct or discriminatory behavior, he should submit it immediately and Genpact would review. She refused to acknowledge the information

provided and ignored the false and defamatory statements that Ms. Saxena had made about him.

35. On April 28, 2015, Plaintiff was advised that Plaintiff's employment with the Defendant had been terminated.

36. On May 1, 2015, Plaintiff wrote to Ms. Mikucki expressing his concerns regarding discrimination and retaliation and correcting the many misstatements in her April 27, 2015 email.

37. In response, Genine Mikucki sent Plaintiff an email response on May 8, 2015 stating he had made claims "without presenting any factual evidence" to support the allegations. She ignored the evidence again and did not comment as to whether or not she had confirmed that Saxena made false and defamatory statements about him. She also did not comment on Saxena's hostile treatment of him in other respects as Plaintiff had reported to her or her ability to objectively evaluate him under the circumstances.

**COUNT ONE:** **ADEA – AGE DISCRIMINATION**

1-37    Paragraphs 1-37 from above are incorporated herein as Paragraphs 1-37 of Count One as if fully set forth herein.

38.    Based on the above, Plaintiff was subjected to discrimination based on his age in violation of the ADEA.

39.    Based on Defendant's conduct, Plaintiff has suffered damages including economic damages, loss of enjoyment of life, emotional distress and attorneys' fees and costs.

**COUNT TWO**: **ADEA - RETALIATION**

1-37    Paragraphs 1-37 from above are incorporated herein as Paragraphs 1-37 of Count Two as if fully set forth herein.

38. Based on the above, Plaintiff was subjected to retaliation based on raising concerns regarding age discrimination.

39. Defendant's conduct in retaliating against Plaintiff constitutes a violation of the Age Discrimination In Employment Act, 29 U.S.C. § 621 through 29 U.S.C. § 634.

40. Based on Defendant's conduct, Plaintiff has suffered damages including economic damages, loss of enjoyment of life, emotional distress and attorneys' fees and costs.

**COUNT THREE:    TITLE VII – GENDER DISCRIMINATION**

1-37. Paragraphs 1-37 from above are incorporated herein as Paragraphs 1-37 of Count Three as if fully set forth herein.

38. Based on the above, Plaintiff was subjected to discrimination based on his sex in violation of Title VII.

39. Based on Defendant's conduct, Plaintiff has suffered damages including economic damages, loss of enjoyment of life, emotional distress and attorneys' fees and costs.

**COUNT FOUR:    TITLE VII – RACIAL DISCRIMINATION**

1-37. Paragraphs 1-37 from above are incorporated herein as Paragraphs 1-37 of Count Four as if fully set forth herein.

38. Based on the above, Plaintiff was subjected to discrimination based on his race and ethnicity in violation of Title VII. Plaintiff is Caucasian.

39. Based on Defendant's conduct, Plaintiff has suffered damages including economic damages, loss of enjoyment of life, emotional distress and attorneys' fees and costs.

**COUNT FIVE: TITLE VII - RETALIATION**

1-37. Paragraphs 1-37 from above are incorporated herein as Paragraphs 1-37 of Count Four as if fully set forth herein.

38. Based on the above, Plaintiff was subjected to retaliation for expressing opposition to discrimination based on his sex and race.

39. Defendant's conduct in retaliating against Plaintiff for expressing opposition to discrimination based on his sex and race / ethnicity violates 42 U.S.C. Section 2000e(3)(a).

40. Based on Defendant's conduct, Plaintiff has suffered damages including economic damages, loss of enjoyment of life, emotional distress and attorneys' fees and costs.

## COUNT SIX:   CFEPA – DISCRIMINATION

1-37. Paragraphs 1-37 from above are incorporated herein as Paragraphs 1-37 of Count Six as if fully set forth herein.

38. Plaintiff was subjected to discrimination based on his race, age and sex in violation of the CFEPA.

39. Based on Defendant's conduct, Plaintiff has suffered damages including economic damages, loss of enjoyment of life, emotional distress and attorneys' fees and costs.

## COUNT SEVEN:   CFEPA – RETALIATION

1-37. Paragraphs 1-37 from above are incorporated herein as Paragraphs 1-37 of Count Seven as if fully set forth herein.

38. Based on the above, Plaintiff was subjected to retaliation based on his expressions of opposition to discrimination based on his race, age and sex in violation of the CFEPA.

39. Defendant's conduct violates CFEPA, C.G.S. § 46a-60a(4)

39. Based on Defendant's conduct, Plaintiff has suffered damages including economic damages, loss of enjoyment of life, emotional distress and attorneys' fees and costs.

**WHEREFORE**, Plaintiff demands a trial by jury and judgment against Defendant as follows:

1. Economic damages including, but not limited to: lost wages and benefits such as pension, 401k, stock, restricted stock and stock options, deferred compensation, bonuses, health, dental, life and disability benefits with interest from the date said sums were due;

2. Non-economic compensatory damages for emotional distress, harm to reputation, and loss of enjoyment of life and equitable relief pursuant to 42 U.S.C. § 1981a, the Age Discrimination in Employment Act, 29 U.S.C. § 621 through 29 U.S.C. § 634 and Connecticut General Statutes § 46a-104;

3. Attorneys' fees and costs of this action, including litigation costs and expert fees, pursuant to 42 U.S.C. § 1981a, the Age Discrimination in Employment Act, 29 U.S.C. § 621 through 29 U.S.C. § 634 and Connecticut General Statutes § 46a-104;

4. Punitive damages pursuant to 42 U.S.C. § 1981a;

5. Liquidated damages pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 through 29 U.S.C. § 634;

6. Interest pursuant to Connecticut General Statutes § 37-3a; and

7. Such other further monetary or injunctive relief as this Court deems necessary and proper.

PLAINTIFF

By: /s/ Heena Kapadia 11869
Heena Kapadia (ct11869)
Law Office of Heena Kapadia
2750 Whitney Avenue
Hamden, CT 06518
Phone:  203-288-8006
Fax:     203-281-7887
*hkapadia@heenakapadialaw.com*