## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SCOTT MIRMINA, | : | |
| | : | CASE NO. 3:16-cv-00614-AWT |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GENPACT, LLC, | : | |
| | : | |
| Defendant. | : | JULY 24, 2017 |
| | : | |

### DEFENDANT'S MEMORANDUM OF LAW
### IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

The motion to compel filed by plaintiff Scott Mirmina ("plaintiff"), post-discovery cut-off, is both untimely and unfounded. Plaintiff offers no explanation for the inordinate delay in bringing to the Court's attention his concerns about the completeness of the discovery produced by defendant Genpact, LLC ("defendant" or "Genpact") in the course of this litigation, nor does he provide any non-speculative grounds for his supposed belief that probative and material documents have been withheld (a belief that, as demonstrated below, is baseless). Plaintiff's motion should therefore be denied.

In terms of timing, "Rule 37 does not establish a deadline for the filing of a motion to compel; rather, that deadline is prescribed by Rule 16, which requires the district court to establish a scheduling order limiting the time to file motions and complete discovery. 'A schedule may be modified only for good cause and with the judge's consent.' Consequently, where[,] as here, a party has filed a motion to compel after discovery has closed, that party must establish good cause for the late filing." Casagrande v. Norm Bloom & Son, LLC, No. 3:11cv1918, 2014 WL 5817562, at *2 (D. Conn. Nov. 10, 2014).

"'The primary consideration' in determining whether good cause has been shown 'is whether the moving party can demonstrate diligence.' In addition to diligence, other factors to consider when assessing whether to enlarge a discovery deadline include: '(1) the imminence of trial; (2) whether the request is opposed; (3) prejudice to the nonmoving party; (4) whether the moving party foresaw the need for additional discovery, in light of the discovery deadline set by the court; and (5) whether further discovery is likely to lead to relevant evidence.'" Id. The record clearly reflects that plaintiff has been far from diligent in pressing the readily foreseeable discovery issues he now raises at this late date, on the eve of a summary judgment deadline. In any event Genpact has not withheld any discoverable documents.

Following a 30-day extension of the original discovery cut-off date, discovery in this case closed on May 30, 2017. Six (6) weeks later, on July 14, 2017, plaintiff filed the instant motion to compel seeking e-mails he surmises may exist that fall within the scope of this district court's Initial Discovery Protocols for Employment Cases Alleging Adverse Action ("the Protocols"). Defendant served its disclosures pursuant to the Protocols, along with responsive documents, on September 30, 2016, better than nine (9) months ago. At no point prior to filing this motion did plaintiff suggest that defendant's Protocol responses generally, or its production of documents called for by the Protocols in particular, were incomplete or in any way deficient.

In the meantime, on December 6, 2016, plaintiff served an initial set of interrogatories and document requests. Defendant timely responded to these discovery demands on January 5, 2017, and as part of that response produced additional documents beyond those turned over per the Protocols. [See Doc. No. 48-2]. Some two (2) months later, on March 16, 2017, plaintiff initiated a meet and confer process challenging certain of the objections defendant asserted in its

2

January 5, 2017 discovery responses.  Eventually, the parties were able to resolve most of the issues, resulting in a further production of documents by defendant.  [See Doc. No. 48-1].

Just prior to defendant's supplementation of its discovery responses, plaintiff filed a motion to compel that was largely obviated by the supplemental disclosures and that this Court otherwise denied, subject to the caveat that defendant was directed to augment its document production "to the extent [plaintiff's] requests [encompassed] materials described in the Initial Discovery Protocols that have not yet been disclosed."  (Ruling on Plaintiff's Motion to Compel and Defendant's Motion to Strike ("Discovery Ruling") [Doc. No. 58], at 11).  Defendant thereafter provided plaintiff with a Verification signed by Richard Sutton, Esq., Genpact's Vice President and Legal Counsel, Human Resources, confirming that, in accordance with the Protocols, he "coordinated a thorough search of all emails and documents relating to, concerning or reflecting GENPACT's decision to terminate Scott Mirmina's employment and provided those e-mails to GENPACT's outside counsel for processing and production."  (A copy of the signed Verification is attached hereto at Tab A).

Now, with discovery having been closed for well over a month, plaintiff claims that documents called for by the Protocols have not been turned over.  In particular, plaintiff surmises "it is highly likely [Ms. Saxena] made derogatory remarks regarding Plaintiff in writing," which documents, if they existed, were covered by the Protocols.  (Memorandum of Law Supporting Motion to Compel ("Pltf's Mem.") [Doc. No. 63-1] at 2).  Were this concern well-founded, and to be clear it is not, there is no reason why plaintiff could not have raised the issue months ago, after defendant made its disclosures pursuant to the Protocols or at the very latest in the immediate aftermath of defendant's production, or supplemental production, in response to plaintiff's Rule 34 requests.

In ruling on plaintiff's prior motion to compel, this Court astutely "note[d] that plaintiff waited over two months to confer with opposing counsel regarding this discovery, and then waited until the eve of the May 30, 2017, discovery deadline -- four months after the receipt of defendant's responses -- to bring this discovery dispute to the Court's attention." (Discovery Ruling at 2-3 n.1). Plaintiff's delay in alerting the Court to what he ostensibly (and mistakenly) believes to be a shortcoming in the Protocols-mandated document production defendant served over eight (8) months ago is even more pronounced, and again, to quote this Court: "The reasons for these delays is not apparent." (Id.).

This lack of diligence on plaintiff's part by itself counsels in favor of denying the motion, especially given the procedural posture of the case—the twice extended deadline for filing dispositive motions is about to expire on August 4, 2017—as well as the fact that plaintiff should have noticed any perceived shortcomings in defendant's Protocol disclosures months ago. Thus, plaintiff suggests that because Ms. Saxena ostensibly "showed no restraint in making false statements to other employees… it is highly likely that she made derogatory remarks about plaintiff in writing." (Pltf's Mem. at 2). But plaintiff knew of the supposedly derogatory oral remarks Ms. Saxena allegedly uttered from the outset, having registered complaints about them to Genpact's human resources department long before he was fired. So, the explanation plaintiff provides for his belief that derogatory e-mails penned by Ms. Saxena exist but have not been produced is rooted in information that is not new, or borne of recently elicited documents or witness testimony, but rather stems from commentary he's known about for over two (2) years. Clearly, then, plaintiff has not pursued this matter with the sort of diligence required to establish good cause for effectively modifying the scheduling order to allow for consideration of his

motion to compel at this late date.  See, e.g., Gucci America, Inc. v. Guess?, Inc., 790 F. Supp. 2d 136, 142 (S.D.N.Y. 2011)(denying motion to compel as untimely).

But even were the Court to overlook plaintiff's lack of diligence, the fact remains that, as verified by Attorney Sutton, defendant did conduct a comprehensive search for, and turned over, all documents subject to production under the Protocols.  The Verification by Genpact's in-house counsel, who coordinated the search for documents, confirms that any writings penned by Ms. Saxena, or anyone else for that matter, that speak ill of plaintiff or his job performance (and there are several) have been produced.  *A fortiori*, the defamatory writings plaintiff speculates about are non-existent.

"Generally, 'a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one 'cannot be required to produce the impossible.' 'In the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion.'  In other words, [p]laintiff[] must cite to specific evidence to challenge [d]efendant[']s[] assertions that no additional responsive documents exist."  Mason Tenders District Council of Greater New York v. Phase Construction Services, Inc., 318 F.R.D. 28, 42 (S.D.N.Y. 2016).  Plaintiff makes no such proffer.

Thus, plaintiff does not point to any document referencing or alluding to unproduced e-mails or other written communications authored by Ms. Saxena that speak negatively about plaintiff.  Nor does plaintiff cite the testimony of any witness who recalls receiving or viewing any such document.  Rather, plaintiff relies solely on speculation that Ms. Saxena must have expressed negative sentiments about plaintiff in writing (beyond the e-mails and other documents critical of plaintiff's performance that have already been produced) akin to the negative

sentiments she ostensibly expressed orally.   But speculation alone cannot be sufficient to overcome defendant's sworn Verification confirming a diligent search for documents was conducted and everything uncovered that was called for by the Protocols turned over to plaintiff.

Although plaintiff cites no authority for the blanket proposition that "discovery rules require something more than reliance upon Ms. Saxena's good faith in producing emails" (Pltf's Mem. at 2), we have no quarrel with the point.   However, plaintiff's apparent assumption that Genpact relied on Ms. Saxena alone to pull together responsive documents is misguided.   To begin with, as noted, the entire search for responsive and discoverable documents was overseen by experienced in-house counsel.   The integrity of the search was aided by the issuance of a litigation-hold memorandum immediately after plaintiff filed his complaint with the Connecticut Commission on Human Rights and Opportunities directing the preservation of all records that might conceivably, and even remotely, bear on plaintiff's claims.   (Sutton Aff. ¶ 2, Exh. A).   And it is not as though Ms. Saxena was the only custodian whose e-mails were searched.   To the contrary, under Attorney Sutton's guidance, Genpact also searched the e-mail boxes of plaintiff's prior managers, Jorge Colon and Greg Meyers, as well as the various members of the human resources department and other managers involved in the performance improvement plan process and/or the decision to terminate plaintiff's employment.   (Sutton Aff. ¶ 3).

Naturally, "a party's issuance of a litigation hold notice does not put an end to the party's obligation to preserve evidence; it is, rather, the first in a series of related steps necessary to ensure that preservation.  'A litigation hold is not, alone, sufficient; instead compliance must be monitored.'"   Bagley v. Yale University, 318 F.R.D. 234, 239 (D. Conn. 2016).   "'For the current 'good faith' discovery system to function in the electronic age, attorneys and clients must work together to ensure that both understand how and where electronic documents, records and

emails are maintained and to determine how best to locate, review, and produce responsive documents.   Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search.'"   Friedman v. SThree PLC, No. 3:14cv278, 2016 WL 7374546, at *3 (D. Conn. Oct. 24, 2016)(Merriam, MJ).   This is exactly what Genpact did in this case, as detailed above and in the accompanying affidavit of Attorney Sutton, thereby fully satisfying its obligation to preserve and produce discoverable documents.

For his part, plaintiff has cited nothing concrete that would even begin to call into doubt the veracity of Genpact's representation that it has fully complied with the Protocols and produced all documents that in any way speak to the events forming the basis of plaintiff's claims.   Rather, plaintiff relies entirely on supposition that Genpact has concealed phantom "smoking gun" documents no witness has ever seen or heard about.   Ultimately, "although plaintiff objects to the completeness of defendant[']s[] document production, he offers nothing to support this contention other than his personal opinion that there must be additional non-privileged documents.   This unsubstantiated opinion, in the face of defendant[']s[] repeated representations that all requested documents have either been produced or are the subject of an objection, is an insufficient basis on which to enter an order to produce additional documents." Vaigasi v. Solow Mgm't Corp., No. 11 Civ. 5088, 2016 WL 616386, at *16 (S.D.N.Y. Feb. 16, 2016).

Accordingly, plaintiff's motion to compel should be denied.

Respectfully submitted,

DEFENDANT,
GENPACT, LLC

By: _____
     Lawrence Peikes (ct07913)
     lpeikes@wiggin.com
     Christine S. Wachter (ct29164)
     cwachter@wiggin.com
     WIGGIN AND DANA LLP
     Its Attorneys
     Two Stamford Plaza
     281 Tresser Boulevard
     Stamford, CT 06901
     (203) 363-7600
     (203) 363-7676 (fax)

**CERTIFICATE OF SERVICE**

This is to certify that on the 24th day of July, 2017, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

_____

Lawrence Peikes

18061\412\3719297.v2

9